**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| **Leroy R. Montgomery,** | ) | **Civil Action No.:__________** |
| **Plaintiff,** | ) | |
| **v.** | ) | **COMPLAINT** |
| **The Bank of Missouri d/b/a First Phase Visa,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Leroy R. Montgomery, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA"). The Plaintiff also seeks compensatory and punitive damages for Defendant's violations of South Carolina common law as set forth herein.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681s-2(b) which is one of the cornerstone provisions of the FCRA.

5. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.* * * * *[A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

**JURISDICTION AND VENUE**

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

**PARTIES**

9. Plaintiff, Leroy R. Montgomery, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant, The Bank of Missouri d/b/a First Phase Visa, is a foreign corporation that may be served with process by way of Adrian Breen, Defendant's CEO and President, at Defendant's corporate headquarters, 916 N. Kingshighway, Perryville, Missouri 63775. Defendant was in all respects and at all times relevant herein, doing business in the State of South Carolina. Defendant furnishes information to credit reporting agencies under 15 U.S.C. §1681s-2.

**FACTUAL ALLEGATIONS**

11. On December 15, 2022, Plaintiff went to his bank, Palmetto First Federal Credit Union, to find out his credit score as he was trying to improve his credit in order to be in a position to buy a home. The bank representative informed Plaintiff his credit score had dropped tremendously and asked if he had taken out any credit cards. Plaintiff was shocked to hear this information because he did not use, own, nor had he even ever applied for a credit card at this time.

12. The Palmetto First Federal Credit Union Infile Credit Report dated December 15, 2022, showed two fraudulent credit card accounts opened in Plaintiff's name.

13. Thereafter, Plaintiff called Experian to dispute the fraudulent credit card accounts

and learned that Defendant was also reporting a fraudulent credit card on Plaintiff's Experian credit report as belonging to Plaintiff.

14. On January 3, 2023, Experian sent Plaintiff its Dispute Results following Plaintiff's dispute showing Defendant had verified the First Phase/TBOM Account ending 0362 (the "Account") as accurate. Therefore, the Account continued to be reported on Plaintiff's Experian credit report as a charged-off account, with $1,107 written off and $1,107 past due.

15. On or about February 1, 2023, Plaintiff called the Consumer Financial Protection Bureau ("CFPB") to report fraudulent credit card accounts reporting on his credit reports, including the Account. Thereafter, on February 2, 2023, the CFPB sent Plaintiff a letter stating that he would need to either file a complaint online or by phone. Included with the letter was a form complaint which Plaintiff completed and returned to the CFPB.

16. On or about February 13, 2023, Plaintiff received a letter from Fairway Independent Mortgage Corp stating his Experian credit score was 540.

17. On April 4, 2023, Plaintiff filed a police report with the Florence County Sheriff's Office concerning the fraudulent credit cards that had been taken out in his name, including the Account, for which he did not apply.

18. On or about February 8, 2024, Plaintiff obtained a copy of his TransUnion credit report online through annualcreditreport.com. Upon reviewing the credit report, Plaintiff discovered that there were numerous fraudulent accounts reporting, including the Account, that did not belong to Plaintiff.

19. On or about February 8, 2024, Plaintiff also obtained a copy of his Equifax credit

report which showed a hard inquiry by Defendant on June 6, 2022, which Plaintiff did not authorize or approve.

20. On or about February 8, 2024, Plaintiff obtained a copy of his Experian credit report online which revealed the Account was still reporting as a charged off account with $1,005 written off and belonging to Plaintiff.

21. On or about February 27, 2024, Plaintiff sent a dispute letter to TransUnion specifically disputing the Account as a fraudulent account opened without his knowledge or permission. TransUnion received Plaintiff's dispute on March 1, 2024, and thereafter forwarded a copy to Defendant.

22. On or about February 27, 2024, Plaintiff also sent a dispute letter to Equifax. In his letter, Plaintiff specifically disputed the hard inquiry by Defendant which Plaintiff did not authorize. Equifax received Plaintiff's dispute on March 10, 2024.

23. On or about February 27, 2024, Plaintiff sent a dispute letter to Experian specifically disputing the Account as a fraudulent account opened without his knowledge or permission. Experian received Plaintiff's dispute on March 1, 2024, and thereafter forwarded a copy to Defendant.

24. On or about March 22, 2024, Plaintiff received a letter from Defendant. In its letter, Defendant stated it had completed its investigation and determined the Account was valid and Plaintiff was liable. Defendant informed Plaintiff the Account was permanently closed due to the "Fraud Application correspondence received."

25. On or about March 27, 2024, Plaintiff received Experian's Dispute Results stating that Account was certified by Defendant as accurate. Accordingly, Experian continued to

report the fraudulent, derogatory Account as belonging to Plaintiff on his Experian credit reports.

26. On or about April 12, 2024, Plaintiff sent a second dispute letter to Experian wherein he stated he had received Experian's dispute results, and the fraudulent Account was still reporting on his credit. Plaintiff again disputed the Account and included a copy of the police report he filed regarding the theft of his identity. Experian received Plaintiff's letter and police report on April 19, 2024, and thereafter forwarded same to Defendant.

27. On or about April 12, 2024, Plaintiff also sent a dispute letter directly to Defendant. In his letter, Plaintiff stated he had been the victim of identity theft and fraudulent accounts had been opened in his name. Plaintiff specifically requested that Defendant forward him copies of the Account application, all statements on the Account, copies of all payment information including the alleged debit payment made on June 13, 2022, and all authorizations for said payments.

28. Defendant received Plaintiff's dispute letter on April 17, 2024.

29. On or about May 1, 2024, Plaintiff received a letter from Defendant again stating it had completed its investigation and determined the Account was valid and Plaintiff was liable. Defendant also again informed Plaintiff the Account was permanently closed due to the "Fraud Application correspondence received." Defendant did not provide Plaintiff with any of the documents he requested.

30. On or about May 6, 2024, TransUnion forwarded its Investigation Results to Plaintiff and the Account was no longer reporting.

31. On or about May 9, 2024, Plaintiff received a letter from Defendant stating it had

received Plaintiff's request for validation of the Account. Defendant stated its records indicated the application was submitted electronically on June 6, 2022, in Plaintiff's name, but Defendant did not provide any other information from the application or a copy of the application. Defendant did provide copies of the first and last monthly billing statements which contained clear evidence of fraud. The first statement showed that the address on the Account was an old address of Plaintiff's where he no longer resided at the time the Account was opened. The first statement also showed that the credit limit was maxed out within six days of the first charge. The last statement on the Account showed that no payments were ever made on the Account prior to charge off.

32. Despite clear signs of fraud, Defendant continued to insist Plaintiff was liable for the debt.

33. On or about May 15, 2024, Experian sent Plaintiff the results of its investigation into his dispute showing the Account had finally been deleted from Plaintiff's Experian credit report.

34. On or about May 23, 2024, Plaintiff sent Defendant a second dispute letter, wherein Plaintiff stated he had received Defendant's letter stating it had completed its investigation and determined the Account was valid and that Plaintiff was liable. Plaintiff again stated he had been the victim of identity theft and that fraudulent accounts had been opened in his name. Plaintiff again requested Defendant to send him copies of the Account application, all statements on the Account, copies of all payment information including the alleged debit payment made on June 13, 2022, and all authorizations for said payments. Plaintiff also included a copy of the police report he filed regarding the theft of his identity.

35. Defendant received Plaintiff's second dispute letter on June 3, 2024, but did not respond to Plaintiff.

36. On or about June 10, 2024, Plaintiff sent a third dispute letter to Defendant stating he did not made any of the charges reflected on the statements provided by Defendant, nor did he make any payment on the Account because it wasn't his account. Plaintiff again stated he had been the victim of identity theft, and asked that his name be removed from the fraudulent Account. Plaintiff also requested that Defendant stop all reporting of the Account as belonging to him. Finally, Plaintiff included another copy of the police report he had filed.

37. Defendant received Plaintiff's dispute letter on June 17, 2024.

38. On or about June 11, 2024, Plaintiff received a letter from Defendant stating it had received Plaintiff's request for validation of the Account. Defendant stated its records indicated the application was submitted electronically on June 6, 2022, in Plaintiff's name. Defendant included another copy of the first and last monthly billing statements.

39. On or about July 3, 2024, Plaintiff received another letter from Defendant. This letter again stated Defendant had completed its investigation of Plaintiff's dispute and determined the Account was valid. Defendant stated its decision the Account was valid was based on the identification information provided at the time of the application was verified as belonging to Plaintiff, the address listed on the application was verified as belonging to Plaintiff, the credit card was mailed to the address used to open the Account, and an $89 payment was received on June 13, 2022. Defendant then stated that the Account had been permanently closed due to Plaintiff's "Fraud Application correspondence" and

that it considered its investigation closed.

40. The statements provided by Defendant did not show the alleged $89 payment on June 13, 2022. In fact, the statements did not show any payment was ever made on the Account.

41. The address used to open the Account was an old address of Plaintiff's and was not correct at the time the Account was opened.

42. Defendant did a hard inquiry of Plaintiff's Equifax credit report at the time the Account was being opened. Therefore, Defendant knew or should have known the address used on the application did not match Plaintiff's current address.

43. On or about August 22, 2024, Plaintiff sent a second dispute letter to Equifax. In his letter, specifically disputed the hard inquiry by Defendant which Plaintiff did not authorize. Equifax received Plaintiff's letter on August 27, 2024, and thereafter forwarded it to Defendant.

44. On or about September 24, 2024, having not received a response from Equifax to his second dispute letter, Plaintiff sent a third dispute letter again disputing the hard inquiry by Defendant which Plaintiff did not authorize. Equifax received Plaintiff's third dispute letter on October 1, 2024, and thereafter forwarded same to Defendant.

45. From approximately July 2022 through September 2024, Defendant reported the fraudulent inquiry/or and resulting fraudulent Account to the credit reporting agencies as belonging to Plaintiff.

46. While Defendant was publishing false information regarding the Plaintiff to the consumer reporting agencies, Plaintiff's credit reports were viewed by Experian Health,

ExpHealth/McLeod Health, Harris & Harris, Ltd, Capital One, MRS Associates, FirstSource Advantage LLC, Kubota Credit Corporation, Xactus-CP/Fairway Inde, Capital One Financial, Mrvvervent-revvi, CPC Credit Vision, Palmetto First FCU, Truist Bank, and others.

47. Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes that the Account was fraudulent.

**COUNT ONE**
**(Fair Credit Reporting Act)**

48. The Plaintiff adopts the averments and allegations of paragraphs 11 through 47 hereinbefore as if fully set forth herein.

49. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendant had provided to a consumer reporting agency.

50. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

51. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the consumer reporting agencies.

52. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and

misleading results of the investigation, if any, to the consumer reporting agencies.

53. Within the two years prior to the filing of this Complaint, Defendant negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

54. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, loss of enjoyment of life, physical sickness, headaches, and mental anguish. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

55. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

56. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

57. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

**COUNT TWO**
**(Fair Credit Reporting Act)**

58. The Plaintiff adopts the averments and allegations of paragraphs 11 through 57 hereinbefore as if fully set forth herein.

59. Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendant had provided to a

consumer reporting agency.

60. Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency pursuant to §1681i.

61. Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendant to a consumer reporting agency.

62. Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the consumer reporting agency.

63. Within the two years prior to the filing of this Complaint, Defendant willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

64. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to his credit and credit reputation, was denied credit, and lost credit opportunities. Additionally, Plaintiff suffered humiliation, anxiety, stress, loss of sleep, anger, worry, loss of enjoyment of life, physical sickness, and mental anguish. Plaintiff has also suffered damages for attorneys' fees, certified mail expenses, and other out of pocket losses.

65. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

66. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which,

but for the acts and omissions of Defendant alleged herein, would not have been necessary.

67. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

68. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

**COUNT THREE**
**(Defamation, Libel and Slander)**

69. The Plaintiff adopts the averments and allegations of paragraphs 11 through 68 hereinbefore as if fully set forth herein.

70. Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish and emotional distress.

71. Said communications were false in that Plaintiff was not indebted to Defendant. The Account was fraudulently opened in Plaintiff's name as a result of identity theft. Plaintiff did not owe any balance on the Account. Despite repeated notice of the fraud, Defendant continued to communicate false and defamatory statements that the Account belonged to Plaintiff and that Plaintiff owed money on the Account.

72. Said false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff. Specifically, Defendant reported the Account to the national consumer reporting agencies as belonging to Plaintiff so the Account would appear on Plaintiff's credit reports. Plaintiff's credit reports were viewed

by numerous third parties as set out above and Plaintiff was denied credit, lost credit opportunities, and suffered other damages.

73. Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including, but not limited to, reporting that Plaintiff owed the Account the subject of this action.

74. At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully and maliciously communicated the falsity.

75. As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe the Account as it was fraudulently opened in his name without his knowledge or permission.

76. As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to be denied credit and credit opportunities, and made to suffer humiliation, anxiety, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which he claims compensatory and punitive damages.

**AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D. For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation of Plaintiff;

E. For this trial to be heard by a jury; and

F. For all such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL – RESTRICTED DELIVERY:**
The Bank of Missouri
d/b/a First Phase Visa
c/o Adrian Breen, CEO and President
916 N. Kingshighway
Perryville, MO 63775